IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| MARION A. HENLEY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CV 117-154 |
| ) | (Formerly CR 116-077) |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner Marion A. Henley filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, raising a single claim that trial counsel failed to file a notice of appeal when directed to do so. (Doc. no. 1.) The Court appointed attorney Beau Worthington to represent Petitioner and conducted an evidentiary hearing on March 13, 2018. (Doc. nos. 5, 12.) Based on the evidence of record, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

I.   **BACKGROUND**

   A.   **Indictment**

On October 4, 2016, the grand jury in the Southern District of Georgia charged Petitioner in a sixteen-count indictment with one count of dealing in firearms without a license, seven counts of felon in possession of a firearm, seven counts of distribution of methamphetamine, and one count of possession with intent to distribute methamphetamine.

United States v. Henley, CR 116-077, doc. no. 1 (S.D. Ga. October 4, 2016) (hereinafter "CR 116-077"). The charge of dealing in firearms without a license carried a maximum term of five years imprisonment, while the felon in possession of a firearm charge carried a maximum term of ten years imprisonment for each of the seven counts. CR 116-077, doc. no. 2. The methamphetamine distribution and possession charges carried a maximum sentence of twenty years imprisonment for each count. Id. at 2. Petitioner retained Christopher Scott Connell to represent him as trial counsel. Id., doc. no. 11.

### B.     Agreement to Plead Guilty

On January 5, 2017, Petitioner appeared with counsel before Chief United States District Judge J. Randal Hall and pleaded guilty to Count Nine, distribution of methamphetamine. Id., doc. nos. 15, 16. In exchange for the guilty plea, the government agreed to (1) dismiss the remaining counts in the indictment; (2) not object to a recommendation for a two-point acceptance of responsibility reduction and move for an additional one-point reduction under the Sentencing Guidelines if Petitioner's offense level was sixteen or greater; and (3) consider filing a motion, based on any "substantial assistance" provided by Petitioner, for downward departure under U.S.S.G. § 5K1.1 or requesting a reduction of Petitioner's sentence under Fed. R. Crim. P. 35. Id., doc. no. 16, pp. 3-4, 6.

Petitioner's plea agreement contained the following factual basis for his guilty plea:

On or about November 6, 2015, in Richmond County, within the Southern District of Georgia, the Defendant aided and abetted by persons known and unknown, did knowingly and intentionally distribute a quantity of methamphetamine (actual), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), and Title 18, United States Code, Section 2.

Id. at 1-2.

By signing the Plea Agreement, Petitioner "entirely waive[d] his right to a direct appeal of his conviction and sentence on any ground" unless the Court (1) sentenced him above the statutory maximum, (2) sentenced him above the advisory Sentencing Guidelines range, or (3) the government appealed the sentence. Id. at 6. Absent one of those three conditions, "[Petitioner] explicitly and irrevocably instruct[ed] his attorney not to file an appeal." Id. By signing the Plea Agreement, Petitioner additionally attested he "read and carefully reviewed this agreement" with Mr. Connell and "that his attorney has represented him faithfully, skillfully, and diligently, and [Petitioner] is completely satisfied with the legal advice given and the work performed by his attorney." Id. at 7, 9.

### C.    Sentencing

The United States Probation Office then prepared a Presentence Investigation Report ("PSI") which set Petitioner's Total Offense Level at twenty-seven, Criminal History Category at VI, and Guidelines imprisonment range at 130 to 162 months. PSI ¶¶ 31, 50, 70. Petitioner's base offense level for Count Nine was twenty-eight, pursuant to U.S.S.G. § 2D1.1, and increased to thirty pursuant to U.S.S.G. § 2D1.1(b)(1) because Petitioner possessed and sold firearms in conjunction with the controlled substance. PSI ¶¶ 22-23. The offense level was subsequently reduced three points for Petitioner's acceptance of responsibility. PSI ¶¶ 29-30. The statutory maximum term of imprisonment for Petitioner's offense was twenty years. 21 U.S.C. §§ 841(a)(1) & (b)(1)(C); PSI ¶¶ 69.

Petitioner raised no objections to the PSI, and Chief Judge Hall imposed a sentence of 160 months imprisonment. PSI Addendum; CR 115-063, doc. no. 25. All other remaining charges against Petitioner were dismissed, and judgment entered on May 31, 2017. Id., doc. no. 25. In keeping with the terms of the Plea Agreement, Petitioner did not

file a direct appeal.

### D.      § 2255 Proceedings

Petitioner then timely filed the instant § 2255 motion to vacate, set aside, or correct his sentence, claiming Mr. Connell provided ineffective assistance in the sentencing phase of the case when he failed to file a notice of appeal as requested.  (See doc. nos. 1; 1-1.)  On March 13, 2018. the Court held a hearing and heard testimony from Petitioner and Mr. Connell.

#### 1.      Petitioner's Evidence and Testimony Regarding Lost Appeal Claim

In his § 2255 motion, Petitioner states he "unequivocally requested" Mr. Connell to "timely notice an appeal" of his sentence and Mr. Connell did not.  (Doc. no. 1, p. 4.)  In his declaration in support, Petitioner states he requested Mr. Connell to file a "direct appeal . . . to the Eleventh Circuit" immediately after sentencing on May 30, 2017.  (Doc. no. 1-1, p. 1.)  Petitioner claims Mr. Connell did not respond to him.  (Id.)  Petitioner believed an appeal was pending until a friend called the Eleventh Circuit to determine the status of the appeal.  (Id.)  Petitioner tried to contact Mr. Connell "on numerous occasions" to receive documents relating to his case, but Mr. Connell did not respond.  (Id.)

At the evidentiary hearing, Petitioner testified as follows.  Before leaving the courtroom after sentencing, Petitioner "asked [Mr. Connell] for an appeal."  (Court's recording system, *For the Record*, (FTR) 11:41:13 – 11: 41:22.)  Mr. Connell said he would come back to the holding cell to discuss an appeal with Petitioner, but Petitioner did not see him again.  (FTR 11:41:22 – 11:41:28; 11:51:33 – 11:51:42.)  Petitioner faxed a letter to Mr. Connell's office in June 2017.  (FTR 11:51:58 – 11:52:08.)  The jail returned the letter to

Petitioner, but he no longer has it. (FTR 11:52:28 – 11:53:05.) Petitioner wants to file an appeal. (FTR 11:41:56 – 11:42:01.)

### 2. Mr. Connell's Testimony

Mr. Connell has more than twenty years of experience as an attorney, and his primary specialty is criminal defense. (FTR 11:54:40 – 11:54:53.) Petitioner retained Mr. Connell shortly after his arrest. (FTR 11:55:14 – 11:55:32.) During the course of the underlying case, Mr. Connell communicated with Petitioner during multiple jail visits and courtroom appearances. (FTR 11:56:43 – 11:57:05.) Petitioner's family members also contacted Mr. Connell "consistently" during his representation of Petitioner. (FTR 12:27:39 – 12:27:46.)

After sentencing, Mr. Connell met with both Petitioner and his family members. (FTR 12:24:21 – 12:24:43.) Mr. Connell met with Petitioner before and after sentencing, as was his general course of conduct. (FTR 12:32:41 – 12:32:57.) Petitioner did not ask Mr. Connell to file an appeal while still in the courtroom. (FTR 12:33:12 – 12:33:22.) After sentencing, Petitioner asked if there was anything that could be done about the sentence. (FTR 12:33:50 – 12:34:00.) Mr. Connell does not recall if Petitioner used the word "appeal," but though it best to interpret his inquiry as such and address the issue. (FTR 12:44:00 – 12:44:32.) Mr. Connell reminded Petitioner about the appeal waiver and told him the sentence was lawful. (FTR 12:34:00 – 12:34:15.) Mr. Connell asked Petitioner if he wanted to pursue an appeal despite the waiver, and Petitioner indicated he did not. (FTR 12:46:45 – 12:47:18.) Petitioner did not "linger" on the issue but "quickly . . . pivoted" to other matters. (FTR 12:33:37 – 12:34:30.) In his notes from the date of sentencing, Mr. Connell memorialized the meetings with Petitioner and his family members. (FTR 12:26:24 –

12:26:59; see also doc. no. 13-2, p. 1.)   Mr. Connell did not meet with Petitioner or receive correspondence from him following sentencing.  (FTR 12:41:30 – 12:41:48.)

Petitioner's family asked if there was anything that could be done since Petitioner was sentenced on the higher end of the guideline range, but there was no specific request to pursue "any kind of action," including an appeal.  (FTR 12:24:36 – 12:25:25.)  Mr. Connell explained the appellate waiver makes an appeal "a more difficult situation" and recommended ways Petitioner could make his incarceration as short as possible.  (FTR 12:25:28 – 12:26:23.)  There was never a follow-up request from either Petitioner or his family members to pursue an appeal.  (FTR 12:25:57 – 12:26:05; 12:27:28 – 12:27:38.)  If either Petitioner or his family indicated an interest in moving forward with an appeal, "it would have triggered a series of things," and Mr. Connell would have pursued an appeal.  (FTR 12:27:51 – 12:28:02; 12:48:05 – 12:48:20.)

## II. DISCUSSION

### A. Under Strickland v. Washington, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim.

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  See Massaro v. United States, 538 U.S. 500, 505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013).  Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions."  Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).

Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. Indeed, "strategic choices are 'virtually unchallengeable.'" Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing Strickland, 466 U.S. at 690). "[A] court should be highly deferential to those choices made by defense counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy." Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1993). To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice. Strickland, 466 U.S. at 690.

Thus, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there

7

is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

A petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted). Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989). Furthermore, "where the alleged error of counsel is a failure to investigate or discovery potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." Hill v. Lockhart, 474 U.S. 52, 60 (1985).

Moreover, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012), *cert. denied*, 568 U.S. 966 (2012). In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58. Thus, a petitioner must prove "serious derelictions" in counsel's advice regarding the plea. Stano v. Dugger, 921 F.2d

8

1125, 1150-51 (11th Cir. 1991) (*en banc*) (citations omitted). Therefore, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, *and* that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial. Hill, 474 U.S. at 56-59.

> **B.  Petitioner Is Not Entitled to Relief on His Ground One Claim Because He Did Not Ask Mr. Connell to File an Appeal and Mr. Connell Fulfilled His Duty to Consult with Petitioner About an Appeal.**

Cases in which a criminal defendant explicitly instructs his attorney to file a notice of appeal are subject to a bright-line rule. "[A]n attorney's failure to file an appeal after the defendant requests him to do so entitles the defendant to an out-of-time appeal, even without a showing that there would have been any viable grounds for an appeal." Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995); see also Roe v. Flores-Ortega, 528 U.S. 470, 477-78 (2000) (holding it is professionally unreasonable for attorney to fail to follow defendant's express appeal instructions). Thus, if the Court determines Mr. Connell failed to honor a request to file a notice of appeal, it must grant Petitioner's § 2255 motion on that ground.

The threshold issue relates to credibility. "Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." United States v. Williams, 731 F.3d 1222, 1230 (11th Cir. 2013) (citing United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002)); see also United States v. Pineiro, 389 F.3d 1359, 1366 (11th Cir. 2004) (recognizing credibility determinations are within province of factfinder); Carr v. Schofield, 364 F.3d 1246, 1264-65 (11th Cir. 2004) (recognizing court's opportunity to observe and study witnesses to make credibility determination concerning

testimony on ineffective assistance claim). In making its credibility determination, the Court must take into consideration not only the interests of the witness, but also "the internal consistency of the [witness's] testimony, or his candor or demeanor on the stand." Ramirez-Chilel, 289 F.3d at 749, 750 (citation omitted).

Here, the Court specifically credits the testimony of Mr. Connell over Petitioner. Mr. Connell, who is a seasoned attorney with a long history of criminal defense work, is well-known to the Court and has demonstrated himself to be an ethical and zealous advocate for his clients. The notion Mr. Connell ignored a specific request to file a notice of appeal on Petitioner's behalf and then lied to the Court about this circumstance is incredible. At the hearing, Mr. Connell testimony was internally consistent and logically sound, and remained so during cross-examination. Mr. Connell recounted his representation of Petitioner in a detailed and methodical manner, referring to his records when necessary. Mr. Connell testified consistently that he had a discussion with both Petitioner and his family following sentencing and nobody requested he file an appeal. More specifically, Mr. Connell asked Petitioner if he wanted to file an appeal and Petitioner said no.

In contrast, Petitioner's self-serving testimony is less credible. Most tellingly, Petitioner's version of the facts—particularly his statement that Mr. Connell never came to see him after leaving the courtroom—is contradicted by Mr. Connell's contemporaneous notes describing the meeting with Petitioner after sentencing to discuss "getting [the]earliest release possible." (Doc. no. 13-2, p. 1.)

Furthermore, Petitioner's allegations in his initial filings lack detail. Petitioner provided no details of his supposed instruction to Mr. Connell to file a notice of appeal, other than to say he made the request. (Doc. no. 1-1.) Also, although Petitioner testified he wrote

10

a letter to Mr. Connell, which was faxed by his place of incarceration and returned to him, Petitioner did not retain a copy of the letter for corroboration and he did not attempt to describe the contents of the letter.  (FTR 11:51:58 – 11:53:05.)  Additionally, there are factual inconsistencies between Petitioner's declaration and hearing testimony.  For example, Petitioner states in his declaration Mr. Connell "did not actually respond" to him after he requested an appeal.  (Doc. no. 1-1.)  However, Petitioner testified twice at the hearing that Mr. Connell responded he would come to the holding cell to discuss an appeal with Petitioner but did not show up.  (FTR 11:41:08 – 11:41:28; 11:51:24 – 11:51:34.)

Accordingly, the Court finds Petitioner did not request Mr. Connell to file an appeal and, thus, Mr. Connell did not provide ineffective assistance of counsel by failing to do so.

Finally, even in cases where a defendant does not specifically instruct his counsel to file an appeal, the Court "must still determine 'whether counsel in fact consulted with the defendant about an appeal,'" and if counsel did not consult, whether there was a duty to do so.  Thompson v. United States, 504 F.3d 1203, 1206-08 (11th Cir. 2007) (citing Flores-Ortega, 528 U.S. at 478, 480).  Mr. Connell testified he consulted Petitioner about a direct appeal.  (FTR 12:44:00 – 12:44:32.)  Mr. Connell reminded Petitioner about the appeal waiver, told Petitioner he believed the sentence was lawful, and indicated he would appeal the sentence if Petitioner requested him to do so.  (FTR 12:34:00 – 12:34:15; 12:27:51 – 12:28:02.)  Accordingly, Mr. Connell fulfilled any duty he had to consult with Petitioner about filing an appeal, and Petitioner is not entitled to relief based on his claim in Ground One.

### III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 27th day of March, 2018, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA